IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FREDDIE LEWIS,**  CASE NO. 3:21 CV 1423

    Plaintiff,

    v.  JUDGE JAMES R. KNEPP II

**SCOTT MATTHIAS, et al.,**

      **MEMORANDUM OPINION**
    Defendants. **AND ORDER**

### INTRODUCTION

This is a *pro se* civil rights action filed by Plaintiff Freddie Lewis, a prisoner in the Toledo Correctional Institution ("TCI"). (Doc. 1). He sues six TCI employees and administrators, including Mailroom Supervisor Captain Scott Matthias, Kenneth Rupert (clergy), Tirra Tomesek, Matthew Wagner, Marshall Klevirser, and C/O Reitemeier, contending they violated his federal civil rights by withholding from him religious items he ordered. For the reasons that follow, his Complaint is dismissed.

### BACKGROUND

Plaintiff alleges he sought and obtained approval from Defendant Rupert to purchase two religious items, a smudge pot and Kin Kic Kin Kic Spirit Sage, from an authorized vendor – Azure Green –to practice his Native American religion. *See id.* at 4-5. When the items arrived in the prison mailroom, however, they were withheld from him. *Id*.

Exhibits Plaintiff submitted with his pleading indicate that, after he complained about not receiving the items, prison officials determined the items he ordered were sent from the approved vendor to a home address (namely, that of an individual named Staffon Hall) and then sent to the

prison, rather than being sent directly to the prison from the approved vendor as prison regulations require. *See* Doc. 1-1, at 12. Plaintiff was advised the manner in which his items were mailed to the prison was not approved. *Id.* Defendant Matthias withheld Plaintiff's package and notified him his items were denied because they needed to be sent directly to the prison from the approved vendor; he also noted it was suspected there was contraband in the package and the items were turned over to an investigator. *See* Doc. 1-3.

Plaintiff does not contend his items were sent directly from the vendor in accordance with prison rules. But he contends the withholding of the items he purchased violates his right to exercise his religion under the First Amendment, to Equal Protection under the Fourteenth Amendment, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). For relief, he seeks to receive "the whole package" of the religious items he ordered and $1.5 million in damages. (Doc. 1, at 5).

## STANDARD OF REVIEW

Plaintiff's application to proceed *in forma pauperis* has been granted by separate Order. Therefore, his Complaint is now before the Court for initial screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Those statutes expressly require federal district courts to screen all *in forma pauperis* complaints filed in federal court, and all complaints in which a prisoner seeks redress from governmental employees, and to dismiss before service any such complaint that the Court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). *Pro se* pleadings generally are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but even a *pro se* complaint must set forth sufficient factual

matter, accepted as true, to state a claim for relief that is plausible on its face in to survive a dismissal. *See Hill*, 630 F.3d at 470-71 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs when reviewing *pro se* prisoner cases under §§ 1915(e)(2)(B) and 1915A).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,'. . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

Upon review, the Court finds that Plaintiff's Complaint must be dismissed.

First, Plaintiff's allegations are insufficient to support any plausible federal civil rights claim against Defendants Tomesek, Wagner, Klevirser, Reitemeier, and Rupert. In order to state a claim for the violation of a civil right under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Liability must be based on each defendant's own, "active unconstitutional behavior." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). A plaintiff must allege facts demonstrating each defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the [challenged action]." *Id*.

The only discernible allegations in Plaintiff's Complaint as to Defendants Tomesek, Wagner, Klevirser, and Reitemeier are that they "witnessed" various conduct. That is, he alleges

3

"Tirra Tomesek and Matthew Wagner witnesse[d] Mr. Kenneth Rupert approv[e]" the religious items he ordered (Doc. 1, at 4), and that "Marshall Klevirser and Officer Reitemeier [were] on the phone with Scott Matthias when [Matthias] told [Plaintiff] to do the paperwork about his religious items," thereby "witness[ing]" a violation of his Fourteenth Amendment rights (Doc. 1, at 5).

These allegations, even liberally construed, are insufficient to support a plausible inference that Defendants Tomesek, Wagner, Klevirser, and Reitemeier were actively involved, or played more than merely "a passive role," in the conduct he challenges as violative of his rights (*i.e.*, the withholding religious items).

Plaintiff's allegations are also insufficient to state a plausible claim against Defendant Rupert, as the only allegation Plaintiff makes as to Rupert is that Rupert *approved* the religious items he ordered. *See* Doc. 1, at 4. Plaintiff does not allege facts giving rise to a plausible inference that Rupert was in any way personally involved in the decision to deny him the items received in the mailroom as violative of prison policy, or that he personally engaged in any other conduct violating Plaintiff's rights.

Second, Plaintiff's allegations are insufficient to state plausible federal civil rights claim against Defendant Matthias (or any other Defendant) on the merits.

Prisoners retain the right under the First Amendment to the free exercise of their religion, *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), but that right is not absolute. "[T]he circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs," requiring a court to "balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985).

A prisoner bringing a free exercise claim has the initial burden of establishing "that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006); *see also Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citing *Salahuddin* for the proposition that a plaintiff must show a substantial burden "at the threshold"). If the plaintiff does so, the burden shifts to the defendant to identify legitimate penological interests which justify the restriction. *Salahuddin*, 467 F.3d at 275.

Further, a prison "regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Prison officials are accorded wide latitude and deference in the adoption and application of prison policies and procedures in this regard. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979); *see also Flagner*, 241 F.3d at 481 ("To ensure that courts afford appropriate deference to prison officials, the Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.") (internal quotations omitted).

"[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems . . . [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974)) (internal citation omitted). "Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Turner*, 482 U.S. at 85.

Similarly, RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden

5

results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Hayes v. Tennessee*, 424 F. App'x 546, 554 (6th Cir. 2011) (quoting 42 U.S.C. § 2000cc–1(a)(1)(2)).

An inmate asserting a claim under RLUIPA must first produce *prima facie* evidence demonstrating that his religious exercise was substantially burdened. *Id.*

Further, under RLUIPA, "'prison security is a compelling state interest' and 'deference is due to institutional officials' expertise in this area.'" *Id.* at 554 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). RLUIPA does not subjugate a correctional facility's "need to maintain order and safety" to the "accommodation of religious observances." *Cutter*, 544 U.S. at 722.

Applying this law, the Court finds Plaintiff has not alleged a plausible free exercise claim under the First Amendment or under RLUIPA. This is so because even liberally construed, his pleading fails to demonstrate a substantial burden has been imposed on his sincerely-held religious beliefs. Requiring Plaintiff to follow applicable prison procedures regarding incoming mail from an approved vendor does not impose a "substantial burden" on him. A government's action constitutes a substantial burden when it forces an individual to choose between "following the precepts of her religion and forfeiting benefits," but not when it merely imposes an inconvenience or makes the practice of one's religion more difficult or expensive, as Plaintiff's allegations at most suggest here. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734-37 (6th Cir. 2007).[1]

---

1. Furthermore, a prison rule requiring that items ordered by prisoners be mailed to the prison directly from approved vendors is entitled to deference, and Plaintiff does not contend that no avenue exists for him to obtain the items he seeks by following the proper procedures.

Nor has Plaintiff alleged a plausible Equal Protection claim. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). "[T]he 'threshold element of an equal protection claim is disparate treatment[.].'" *Id.* (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). Plaintiff has not alleged facts plausibly suggesting he has been treated disparately as compared to any other similarly-situated inmate with respect to incoming mail. He has not alleged any other inmate was permitted to receive religious items under the same circumstances, *i.e.*, where ordered religious items were mailed to the institution from an individual residence rather than the approved vendor. Accordingly, he has not pleaded that he was subjected to disparate treatment as is necessary to state a claim.

## CONCLUSION

For all of the foregoing reasons, the Court finds Plaintiff's Complaint fails to state a plausible federal civil rights claim upon which he may be granted relief, and it is therefore

ORDERED that this action be, and the same hereby is, is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision cannot be taken in good faith.

 s/ James R. Knepp
UNITED STATES DISTRICT JUDGE